Decided 29 May, 1905.
## EX PARTE EASTHAM.
80 Pac. 1057.

DISBARMENT OF ATTORNEYS.
In order to justify the disbarment of an attorney, his conduct must have been such as to evidence his unfitness for that confidence and trust which attend the relation of attorney and client and the practice of law before the courts, or it should show such lack of personal honesty or of good moral character as to render him unworthy of public confidence.

Disbarment proceeding against Henry C. Eastham, resulting in an acquittal.                                        DISMISSED.

For relators there was an oral argument by *Mr. Milton W. Smith*.

For the accused there was an oral argument by *Mr. William Smith.*

PER CURIAM. This is a proceeding instituted in pursuance of certain charges of unprofessional conduct made against the defendant by Lulu B. Currey. As formally preferred in this court, they are, in substance, that the defendant was employed by Mrs. Currey as an attorney to examine the title to certain lands that had been sold under foreclosure proceedings, she having in view the purchase of the sheriff's certificate of sale, and to advise her whether any liens, by way of judgment or otherwise, existed, affecting them, not precluded by the foreclosure; that in pursuance of such employment he examined the title, and advised her that there were no such liens, and that, relying thereon, she completed the purchase; that, notwithstanding his advice and instructions, there existed in fact a judgment lien against the premises, of which the defendant had knowledge, which judgment he subsequently purchased, and, by taking an assignment in the name of another, threatened execution, and compelled her to pay a sum largely in excess of the amount he paid for the same. A large amount of testimony has been taken and submitted, but, from the conclusions we have reached, it will only be necessary that we advert to it in a summary way.

From the defendant's admissions made to members of the Grievance Committee of the Oregon Bar Association, it must be conceded, we think, that he was employed by Dr. H. E. Currey, the husband of Mrs. Currey, to ascertain whether any liens

existed against the title to the premises, a sheriff's certificate of sale to which he then intended purchasing, and which he afterwards concluded, but took the assignment in the name of his wife, the complainant. The defendant says, however, that such was not his real employment, but that he was only to advise and assist him in securing the transfer, and that subsequently he was requested to determine, from the judgment roll, whether the foreclosure proceedings would carry title to the water rights supposed to be involved. The fact that Dr. Currey was but an agent in the employment by his wife was unknown to the defendant until the transfer was about to be closed. There is no evidence that the defendant acquired knowledge of the fact of the existence of the judgment through the course of his employment. His testimony is to the contrary; that is, that he came into possession of such knowledge some time after the transactions were had relative to the purchase of the sheriff's certificate, from an outside source entirely, and by consulting the records he verified the truth of it. This is the best information we have upon the subject, and the correctness of it is reenforced by the further admissions of the defendant to members of the grievance committee that when he ascertained about the judgment he purchased it for $100, with a view and intention at the time of turning it over to Mrs. Currey for just what it cost him. He took the assignment, however, in the name of another, which fact is calculated to shadow somewhat his avowed intentions; but it could scarcely overcome his apparently candid statements to the grievance committee, which were induced and verified by a thoroughly searching examination. Taking the fact to be that he ascertained the existence of the judgment from outside sources, that he verified the information by a search of the records, and that he purchased the judgment, intending in good faith to turn it over to Mrs. Currey for the sum he paid for it, we can draw but one inference, which is that he, by lack of proper diligence or by oversight, failed to find the judgment, and erroneously, not willfully, advised his client with reference to the status of the title to the land she was about to purchase. At the best, there is not sufficient in this to show that he was informed of the judgment at the time he advised

with Mrs. Currey, and that he willfully concealed the fact, with a view and purpose of making gain out of the transaction by purchasing and enforcing the judgment.

Subsequent to or about the time of his purchase some trouble arose between him, or the firm with which he was connected, and Dr. Currey, relative to an account for services that the firm had rendered him; and further than this, other trouble arose between the defendant personally and Dr. Currey, superinduced by the latter circulating false and scandalous reports about the defendant, derogatory to his personal character, claimed to have been based upon information obtained through professional employment as a physician, who at the same time demanded of defendant an exorbitant sum for his services, and threatened to enforce the demand by a further exposure of the defendant. These things the defendant, in effect, says so annoyed and enraged him that he was driven to enforce the judgment for the purpose, first, of compelling payment of his firm's claim; and, second, of counteracting the exorbitant demand that Currey was seeking to have him pay. Execution was accordingly issued, and $350 realized upon the judgment. Subsequently Mrs. Currey sued the firm with which defendant was connected for neglect of duty in the examination of the title in question, and a settlement was, we gather from defendant's testimony, finally had with Currey, which may or may not have included the money received on the judgment. We infer, however, that it did, but Currey's bill for professional services was never paid; he having in the mean time wickedly defamed the defendant, and maligned and traduced his character.

Such is the substance of the controversy, and the position of the defendant with relation to it. Does it convict him of unprofessional conduct, such as should disbar him from further practicing in the courts of justice? To suffice for that purpose, his conduct must have been such as to evidence his unfitness for that confidence and trust which attend the relation of attorney and client, and the practice of law before the courts, or it should show such lack of personal honesty or of good moral character as to render him unworthy of public confidence: 3 Am. & Eng. Enc. Law (2 ed.), 302. Finding that he had erred in his advice

through lack of knowledge, attributable to his oversight, the motive that induced him to purchase the judgment—that is, to turn it over to Mrs. Currey for what it cost him—was not an unworthy one—and, had he carried out his purpose, the affair would probably have been satisfactorily adjusted, and no one's honor have been impugned. But it was about this time that developments led to hot blood between the defendant and Currey, and the retaliatory measures resolved upon, culminating in the defendant's collection of $350 on the judgment. It seems certain that Eastham has not availed himself of knowledge obtained through his employment for his personal profit and gain, in violation of the trust and confidence reposed in him as an attorney. What knowledge came to him later he eventually made use of for another purpose—that of inducing Currey to deal right with him. While we are not to justify such a course in legal ethics, it is but natural and human for a person to show some mettle when attacked in such an unmanly and unwarrantable manner. His was not such conduct, however, as renders him unworthy of that confidence and trust that should attend the relation of attorney and client. Nor does it stamp him with such a lack of honesty and good morals as to render him unworthy as a practitioner at the bar. He seems, in the end, after the settlement of September, 1900, when the civil action instituted by Mrs. Currey against the firm was adjusted, to have retained nothing that might be considered unconscionable or dishonorable, so that, in view of the entire record, we conclude that the defendant should be exonerated and the charges dismissed, and such will be the order of the court.                              CHARGES DISMISSED.